Argued 6 July, decided 31 July, 1905.

**STATE *v.* REA.**

81 Pac. 822.

CRIMINAL LAW—EVIDENCE OF OTHER CRIMES.

1. Evidence otherwise competent should not be excluded because it may incidentally tend to connect defendant with other offenses than the one for which he is on trial, though the prosecution should not be allowed to directly show that defendant has committed other crimes not connected with the one under consideration.

For example: Where, in a prosecution for horse theft, defendant R. offered evidence that M. gave him a certain sorrel colt two years before, and that one of the horses alleged to have been stolen and sold was the colt in question; that M. used a "JL" brand on the left shoulder, but thereafter changed the brand to "JL" with a bar, and used it on the stifle, evidence of another that he knew the bay mare that defendant claimed to have gotten from M., and that it was not the same mare that defendant sold; and that she was branded with "JL" on the right shoulder, and that the brand which M. used for his own animals was placed on the left shoulder, and was then "JL" with a bar, while the brand on such bay mare was "JL" without the bar on the right shoulder—was not objectionable in rebuttal, though it also tended to show that defendant had committed an independent crime.

MISCONDUCT OF JUROR AS GROUND FOR NEW TRIAL.

2. The weight of the testimony in this case shows that the remarks attributed to the prosecuting witness were made by another person, and that the juror did not hear them at all, so manifestly there was neither misconduct by the juror nor any attempt to influence the jury.

From Morrow: WILLIAM R. ELLIS, Judge.

Albert H. Rea and Charles Matteson were convicted of horse stealing and appeal. The case was submitted on briefs under the proviso of Rule 16: 35 Or. 587, 600.          AFFIRMED.

For appellants there was a brief over the name of *Bennett & Sinnott.*

For the State there was a brief over the name of *Gilbert Walter Phelps,* District Attorney.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

An information having been filed charging the defendants with the larceny of one mare, the property of W. E. Royse, and one mare and two colts, the property of J. M. Humphrey, a conviction was had and judgment ensued from which defendants appeal.

1. The two mares, one being a sorrel and the other a bay, were branded with an "H" on the left stifle or hip, and with a secret brand with the same initial on the inside of the right leg. This was Humphrey's brand, but the defendant Rea used an "H" brand at the time. The animals were driven from the ranch in Morrow County to Grant County and sold by the defendants. The defendants offered evidence tending to show that one Morrow gave the defendant Rea a sorrel colt, a yearling past or two years old, that had a cut or scar on the fore foot made by a wire, and at another time gave him a bay colt. There is uncertainty in the testimony as to the time when this last transaction took place. Rea took possession of Morrow's ranch as foreman in September, 1898, and, together with his wife, occupied it in that capacity for about two years. Prior to that time Rea was in the employ of Morrow, taking care of his sheep, and was about the ranch where the horses ranged more or less. Morrow testified that Rea came into his office, which was adjoining the hotel, and said that there was a "nice bay colt out there," and asked witness to give it to him, and that witness was satisfied to let him have it. Morrow was unable to fix the date of this transaction, and it is only by relation to the time that he was in the hotel business that he could speak as to the matter. He finally concluded that

it was not until 1899 that he took charge of the hotel, although his first impression was that it was in 1898. He further described the colt when given as a "nice little colt," although he says he never saw it. Morrow used a "JL" brand on the left shoulder for a time, but, on finding that another party used the same brand, he changed to "JL" with a bar and used it on the stifle. Mrs. Rea testified that Rea had the colt at the ranch while they occupied it.

In this condition of the record, the State called N. H. Leathers, who was asked, in substance, to state whether or not he knew the bay mare or filly that defendant claimed to have gotten from Morrow during the time that he was upon his ranch, to which he answered in the affirmative. He further answered that it was not the same mare that defendants sold at Sumpter, and that she was branded with "JL" on the right shoulder. On cross-examination he further testified that it was some time in the summer of 1898 that he was looking for the animal, that she was a yearling past then, and that Matthews was on the ranch; he being foreman for Morrow, whom Rea succeeded. Witness could not say, however, whether Rea was living there at the time or not. In further examination the witness stated that the brand which Morrow used for his own animals was placed on the left stifle, and was then "JL" with a bar across the initials; that the brand upon the filly was "JL" without the bar on the right shoulder; and that he was looking for the individual filly with the "JL" on her.

Now, it is insisted on the part of the defense that this testimony of Leathers was not properly in rebuttal, and that it was injurious to defendants' case, as it tended to prejudice Rea and the defendants' witnesses in the minds of the jury, by carrying with it inferentially the implication that he or the witnesses had committed an offense other than the one with which the defendants were charged. As a general rule, evidence of an independent crime and matters connected therewith, altogether disconnected with the crime under investigation, which throws no light on the alleged criminal transaction, is to be excluded, as its only tendency could be to distract the attention of the jury from the real issues in the cause and superinduce prejudice against the

accused: *State* v. *Parker,* 96 Mo. 389 (9 S. W. 728); *Boyd* v. *United States,* 142 U. S. 450 (12 Sup. Ct. 292, 35 L. Ed. 1077); *Ogle* v. *Brooks,* 87 Ind. 600 (44 Am. Rep. 778). The purpose the State had in view in offering the testimony of Leathers was to rebut the inference deducible from the testimony of Morrow and Mrs. Rea, when connected with the State's testimony, that the bay mare driven away and sold by the defendants was the bay colt that Morrow gave to Rea. Manifestly such was its effect. It is argued that, under the evidence, the bay filly that Leathers referred to could not have been the same bay mare which the defendants are charged with stealing, and which their witnesses left one to infer was the bay colt grown up that Morrow gave to Rea, because it is said the bay colt was given to Rea in 1899, when it was a little colt, and it was in 1898 that Leathers was in search of the filly. It may be remarked as to this that there is much uncertainty as to the dates, and a great deal of uncertainty as to the age of the colt when given to Rea. But, however this may be, it is not shown that Morrow gave Rea more than one bay colt, and, it being an unusual transaction, the strong inference would be that he gave but one. Now, if Rea was claiming another colt of the same color as being the one that Morrow gave him, and it would seem that he was from the brands, it would undoubtedly weaken his claim that the animal in question was that particular colt. In this view of the matter, the testimony was competent. It is not unusual for persons charged with theft to attempt to account for the property found in their possession, and, if they claim ownership, any inconsistent claim of ownership that they may have made would be relevant to rebut their present claim. The rebuttal testimony of Leathers has such a tendency to discredit Rea's present claim of ownership of the bay mare. The testimony does leave the impression that the defendant Rea was claiming an animal not his own, which was branded in an unusual way, thus casting a grave suspicion upon his motive and demeanor; but, so long as the evidence was relevant and pertinent for the essential purpose, it is admissible, although it does tend to substantiate the commission of another and independent crime. The objection is, therefore, not well taken.

2. Another error is assigned relative to a motion made by defendants while the trial was in progress to discharge the jury because of the misconduct of Benge, one of the jurors. From the record we gather that the jury was allowed to separate, and the particular complaint is that W. E. Royse, the prosecuting witness, spoke in disparagement of the credibility of two of the defendants' witnesses in the presence of the juror, and that Royse was persistent in hanging about the jurors during the recess or adjournment of the court. The complaint is supported by the affidavits of Rea and his wife and of Otis Stubblefield and his wife. Rea avers that Royse was active and officious in the case; that he was hanging around among the jurors a great deal; that affiant saw him apparently in confidential talk with jurors alone; that he saw him standing immediately in front of Ralph Benge, and about two feet from him, talking earnestly and excitedly. Mrs. Rea and Mr. and Mrs. Stubblefield corroborate this latter statement, and Stubblefield further avers that he returned and that Royse was talking to Benge about the case; that he heard Royse say to him that "Bill Ball and Dutton proved Will Morrow a liar," or words to that effect; that Royse further said to the juror, in effect, that Bill Blackwell, another witness for defendants, was not entitled to credit, and that no one paid any attention to him.

Combating the charge, the State filed the affidavits of Royse, Benge, and Floyd Thomas. Benge avers that he was in the store of Thompson Bros. on the evening alluded to; that he was talking with Floyd Thomas, a clerk, but that, upon the approach of Royse, he left the store; that he heard no conversation whatever between Thomas and Royse; that no conversation whatever occurred between affiant and Thomas, or in his presence, having relation to the case on trial; and that he carefully refrained from disobeying the instructions of the court to the jurors that they should not suffer any one to talk to them, or in their presence, about the case. Royse avers that he did not make the remarks attributed to him by Stubblefield, but declined to discuss matters connected with the case on the occasion mentioned. Thomas avers that he made the remarks attributed to Royse, but that, if any of the jurors were present when he gave utterance to them,

he was not aware of it, and that he had no such motive as prejudicing the minds of any of the jurors at the time. The trial court, considering these proofs, denied the motion. The decision was in accordance with the preponderance of such proofs, laying out of the case the discretion to be judicially exercised in the premises by the trial court. The juror Benge, not having heard the offensive utterances attributed to Royse, but probably in fact attributable to Thomas, could not have been influenced thereby. The presumption is that he was not, unless the contrary is shown, or such facts proven that the deduction could reasonably be made. But neither of these conditions has been established.

These considerations affirm the judgment of the circuit court, and such will be the order of this court.                    AFFIRMED.